IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JERRY LEE ISNER, II,**

    **Plaintiff,**

  v.                                  CIVIL NO. 2:21-CV-27
                                        (KLEEH)

**CITY OF ELKINS and**
**CORPORAL C. BOATRIGHT,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART**
**AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [ECF NO. 6]**

Pending before the Court is a motion to dismiss filed by the Defendants, Corporal C. Boatright ("Boatright") and the City of Elkins ("City of Elkins") (together, "Defendants"). For the reasons discussed herein, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

**I.    PROCEDURAL HISTORY**

On December 16, 2021, Plaintiff Jerry Lee Isner, II ("Plaintiff") filed a complaint against Defendants, asserting four causes of action: (I) Excessive Force (42 U.S.C. § 1983) (against Boatright); (II) Reckless/Malicious Conduct (W. Va. Code § 29-12A-5(b)(2)) (against Boatright); (III) Deliberate Indifference (42 U.S.C. § 1983) (against the City of Elkins); and (IV) Injunctive Relief (against the City of Elkins). Defendants filed the pending motion to dismiss on January 26, 2022. The motion is fully briefed

and ripe for review. The Court held a hearing on the motion on May 16, 2022.

## II. FACTS[1]

Plaintiff was arrested on or about March 27, 2020, by the Elkins Police Department. Compl., ECF No. 1, at ¶ 1. He was carrying a .22 rifle in an alley. Id. Plaintiff was tazed, immobilized, and handcuffed. Id. Then Boatright, a police officer employed by the City of Elkins, kicked and struck him in the head and body. Id. ¶¶ 1, 2. Plaintiff alleges that he did not pose a threat at the time he was kicked and struck, so the actions constituted unlawful force. Id. ¶ 3. Plaintiff alleges that the actions were malicious, as evidenced by repeated threats made toward Plaintiff by Boatright. Id. ¶ 4. He alleges that he suffered serious physical and emotional injuries. Id. ¶ 5.

## III. STANDARD OF REVIEW

Rule 12(b)(6) allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted[.]" In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (citations omitted). A

---

[1] For purposes of analyzing the motion to dismiss, the Court assumes that Plaintiff's asserted facts are true.

court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Dismissal is appropriate only if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of his claim." Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969).

## IV. DISCUSSION

As discussed below, the motion to dismiss is denied with respect to Counts One and Two and granted with respect to Counts Three and Four. The Court further finds that W. Va. Code § 55-7-13d does not bar Plaintiff from recovery at this stage. Finally,

at this juncture, the motion with respect to punitive damages is granted in part and denied in part.

### A. Count One – Excessive Force (Boatright)

The Court denies the motion to dismiss with respect to Count One. Qualified immunity can be afforded to government officials for discretionary acts taken in their official capacity. The protection extends to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). An officer, generally, is protected by qualified immunity if his "actions could reasonably have been thought consistent with the rights . . . alleged to have [been] violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987).

The test to determine whether an officer is entitled to qualified immunity is two-fold: the Court must determine "(1) whether a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation[.]" Jones v. City of Martinsburg, 961 F.3d 661, 667 (4th Cir. 2020) (citation omitted). In determining whether a right is clearly established, the "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Brosseau v. Haugen, 543 U.S. 194, 198-99 (2004) (citation omitted). The Court can address either prong first. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [ECF NO. 6]**

Under the Fourth Amendment's "reasonableness" analysis, force is not excessive if it is objectively reasonable under the circumstances facing the officer, without regard to his underlying intent. Graham v. Conner, 490 U.S. 386, 397 (1989). The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97.

The Supreme Court has "stressed the importance of resolving [qualified] immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (citations omitted). "The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." Id. (citation omitted). As the Supreme Court has stated,

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate

> threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Id. (citations omitted).

A violation of a constitutional right "may be clearly established if the violation is so obvious that a reasonable state actor would know that what they are doing violates the Constitution, or if a closely analogous case establishes that the conduct is unconstitutional." Siebert v. Severino, 256 F.3d 648, 654-55 (7th Cir. 2001) (citation omitted). When the conduct of a government official "is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established." Mendoza v. Block, 27 F.3d 1357, 1361 (9th Cir. 1994).

As the Fourth Circuit noted in Jones, "in 2013, it was clearly established that suspects can be secured without handcuffs when they are pinned to the ground, and that such suspects cannot be subjected to further force." 961 F.3d at 668. In 2020, the Jones court, likewise, denied summary judgment because "Jones, although armed, had been secured by the officers immediately before he was

released and shot; and (2) Jones, although armed, was incapacitated at the time he was shot." Id.

Here, Defendants argue that Boatright is entitled to qualified immunity because his actions were objectively reasonable. Defendants offer context for Plaintiff's allegations and attach the criminal complaint that was filed against Plaintiff. Defendants argue that Plaintiff had committed a severe crime by shooting a police officer, he posed a risk to officer safety and the safety of others by using his firearm in public, he ignored officer commands, he continued to use explicative language, he spat on Boatright, and he resisted arrest and was combative. In response, Plaintiff states that he was defenseless and incapacitated at the time that Boatright struck and kicked him, which is clearly a violation of his Fourth Amendment rights.

At this stage, the Court must assume that Plaintiff's asserted facts are true. Plaintiff was lying on the ground, handcuffed, defenseless, and incapacitated, at the time that Boatwright struck him. Jones makes clear that this is a violation of Plaintiff's Fourth Amendment rights. See 961 F.3d 661. With respect to Count One, Plaintiff has asserted "enough facts to state a claim to relief that is plausible on its face." See Twombly, 550 U.S. at 570. The Court denies the invitation to consider Defendants'

version of the facts and finds that Count One is sufficiently pled. The motion to dismiss is **DENIED** with respect to Count One.

   B.   Count Two – Reckless/Malicious Conduct (Boatright)

The Court denies the motion to dismiss with respect to Count Two. W. Va. Code § 29-12A-5(b) provides:

> (b) An employee of a political subdivision is immune from liability unless one of the following applies:
>
>    (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
>
>    (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
>
>    (3) Liability is expressly imposed upon the employee by a provision of this code.

Here, Plaintiff argues that Boatwright's conduct falls within W. Va. Code § 29-12A-5(b)(2), which provides that employees of political subdivisions are not immune from liability when their acts/omissions are "with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" During the motion hearing, Plaintiff clarified that Count Two asserts a statutory claim for malicious conduct under West Virginia's Governmental Tort Claims and Insurance Reform Act. Defendants argue that because the conduct was reasonable under the Fourth Amendment analysis, it could not have been malicious or reckless under § 29-12A-5(b).

Again, the Court takes Plaintiff's alleged facts as true at this stage. Plaintiff was on the ground, handcuffed and incapacitated, when Boatwright kicked and struck him. It would be premature to make a finding that the circumstances in this case were reasonable based on Defendants' asserted facts. The Court, therefore, **DENIES** the motion to dismiss with respect to Count Two.

### C. Count Three – Deliberate Indifference (City of Elkins)

The Court grants the motion to dismiss with respect to Count Three. A municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights. <u>Monell v. Dep't of Social Servs. of City of New York</u>, 436 U.S. 658, 694 (1978). "[T]he substantive requirements for establishing municipal liability for police misconduct are stringent indeed. The critical Supreme Court decisions have imposed this stringency in a deliberate effort to avoid the indirect or inadvertent imposition of forms of vicarious liability rejected in <u>Monell</u>." <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1391 (4th Cir. 1987).

Courts have required plaintiffs to demonstrate "persistent and widespread . . . practices of [municipal] officials," along with the "duration and frequency" – which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their "deliberate

indifference." Id. at 1386–91. "Sporadic or isolated violations of rights will not give rise to Monell liability; only 'widespread or flagrant' violations will." Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 402-03 (4th Cir. 2014) (citation omitted).

"It is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." Lytle v. Doyle, 326 F.3d 463, 473 (4th Cir. 2003) (citation omitted). However, the Fourth Circuit has recognized that "a county's failure to adequately train its officers can be so egregious as to warrant a finding that it amounts to a policy or custom for which the county should be held responsible." Guerra v. Montgomery Cty., 118 F. App'x 673, 676 (4th Cir. 2004) (unpublished) (citing City of Canton v. Harris, 489 U.S. 378, 389-90 (1989)).

Here, Defendants argue that Plaintiff has failed to allege a custom, history, and policy of allowing excessive force.[2] Plaintiff does not address this argument in its Response. The Complaint alleges that the City of Elkins "has a custom, history

---

[2] Defendants also argue that both claims against the City of Elkins fail due to a lack of underlying Constitutional violation. Because the Court has already denied the motion to dismiss with respect to Count One, it will not address this argument.

and policy that allows its officers to use excessive force without consequence." Compl., ECF No. 1, at ¶ 16. Plaintiff asserts that the City of Elkins has violated his constitutional rights by its deliberate indifference, which is evidenced by its failures to address, train, or discipline Boatright. Id.[3]

The Court finds that Plaintiff has failed to sufficiently plead that the City of Elkins has an official policy, custom, or history that allows its officers to deprive individuals of their constitutional rights. The Complaint includes only a conclusory statement that such a policy exists and then cites the facts at issue in this case. This single incident cannot establish Monell liability against the City of Elkins, and in this case, the failure of the City of Elkins to train its officers, assuming this fact to be true, is not sufficiently egregious to warrant a finding that it amounts to a policy or custom for which the City of Elkins should be held responsible. As such, the Court **GRANTS** the motion

---

[3] Plaintiff states that the City of Elkins's representative informed newspapers that an internal review found no wrongdoing by Boatright. Compl., ECF No. 1, at ¶ 16. He argues that "[a]n impartial review of the evidence would require the City to take action or discipline or discharge the officer involved." Id. Upon information and belief, Plaintiff states, the City of Elkins has taken no action to discipline Boatright. Id. Plaintiff argues, "The failure of the City to take action, now and in the past, perpetuates the ongoing use of excessive force by City employees such as Boatright. This policy results in the citizens of Elkins, and in this instance Mr. Isner, having his constitutional rights violated during arrests." Id.

to dismiss with respect to Count Three and dismisses it as a matter of law.

    **D.**    **Count Four – Injunctive Relief (City of Elkins)**

The Court grants the motion to dismiss with respect to Count Four. A plaintiff "must demonstrate 'a personal stake in the outcome,' showing that they have 'sustained or [are] immediately in danger of sustaining some direct injury as the result of the challenged official conduct." <u>Maryland Shall Issue, Inc. v. Hogan</u>, 971 F.3d 199, 220 (4th Cir. 2020) (quoting <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 101-02 (1983)). In <u>Lyons</u>, although the plaintiff had previously been handcuffed and choked by a police officer, the Supreme Court held that absent a sufficient likelihood that he would again be wronged in a similar way, the plaintiff was no more entitled to an injunction than any other citizen in Los Angeles. <u>Lyons</u>, 461 U.S. at 111.

Here, Plaintiff seeks injunctive relief requiring the City of Elkins to implement policies to prohibit the kicking and striking of citizens who have been arrested and handcuffed. Compl., ECF No. 1, at ¶ 20. Defendants argue that Plaintiff lacks standing to request declaratory relief and that he has failed to identify a

justiciable controversy.[4] Plaintiff did not address this argument in his Response.

The Court finds that Plaintiff has not pled facts to indicate that there is a sufficient likelihood that he will suffer the same alleged wrong in the future. The Complaint cites no facts beyond the incident at issue in this case. As such, Plaintiff is no more entitled to an injunction than any other citizen in Elkins. The Court **GRANTS** the motion to dismiss with respect to Count Four and dismisses it as a matter of law.

### E.  Damages Issues

Defendants' motion to dismiss also raises issues with respect to damages available. First, Defendants argue that W. Va. Code § 55—7-13d bars Plaintiff from recovering damages because Plaintiff was committing a felony. Second, Defendants argue that Plaintiff may not recover punitive damages as a matter of law.

#### 1.  Commission of a Felony, W. Va. Code § 55-7-13d

The West Virginia Code provides,

> In any civil action, a person or person's legal representative who asserts a claim for damages may not recover if:
>
> Such damages arise out of the person's commission, attempted commission, or immediate flight from the commission or

---

[4] Defendants also argue that both claims against the City of Elkins fail due to a lack of underlying Constitutional violation. As the Court has already denied the motion to dismiss Count One, it will not address this argument.

13

>     attempted commission of a felony; and (2) that the person's damages were suffered as a proximate result of the commission, attempted commission, or immediate flight from the commission or attempted commission of a felony. . . . The burden of alleging and proving the defense . . . shall be upon the person who seeks to assert such defense: *Provided*, That in any civil action in which a person has been convicted or pleaded guilty or no contest to a felony, the claim shall be dismissed if the court determines as a matter of law that the person's damages were suffered as a proximate result of the felonious conduct to which the person pleaded guilty or no contest, or upon which the person was convicted.

W. Va. Code § 55-7-13d.

Defendants argue that this code section prohibits Plaintiff from recovering damages because he was engaged in a felony when the incident at issue occurred. Plaintiff, on the other hand, argues that state law cannot govern the § 1983 claims at issue. At the time Plaintiff filed his response, he argued that he had not been convicted of a felony. He has since been convicted of two counts of malicious assault on an officer and one count of wanton endangerment, both related to the incident at issue in this case. Despite the convictions, Plaintiff asserts that the malicious/reckless conduct occurred after he was in handcuffs and arrested, so the statute would not apply.

The Court finds that W. Va. Code § 55-7-13d does not prevent Plaintiff's recovery for a few reasons. First, the West Virginia

Legislature cannot limit Plaintiff's recovery under 42 U.S.C. § 1983, a federal statute. See Chapman v. Houston Welfare Rts. Org., 441 U.S. 600, 613 (1979) ("For even though [the Supremacy] Clause is not a source of any federal rights, it does 'secure' federal rights by according them priority whenever they come in conflict with state law."); Cutright v. Metro. Life Ins. Co., 491 S.E.2d 308, 309 (W. Va. 1997) ("The Supremacy Clause of the United States Constitution, Article VI, Clause 2, invalidates state laws that interfere with or are contrary to federal law."). Second, again, assuming Plaintiff's asserted facts are true for purposes of the motion to dismiss, Plaintiff was handcuffed and incapacitated at the time he was struck. The commission of any felony had already ceased. Thus, to the extent Defendants argue that § 55-7-13d limits recovery under any state law claims, the Court disagrees at this stage.[5] The Court **DENIES** Defendants' request to limit damages available pursuant to W. Va. Code § 55-7-13d at this juncture of the case.

   2. **Punitive Damages**

The Court has already dismissed the City of Elkins from this suit, so it will not analyze whether punitive damages are available

---

[5] Again, the Court is required to assume all facts alleged are true. Should discovery reveal a different picture, Boatright would certainly be free to renew this argument under Rule 56 and its standards.

against it. With respect to the claims against Boatright, punitive damages are not available in § 1983 actions against officers sued in their official capacities. Edwards v. Ashley, 70 F.3d 111, 1995 WL 668002, at *1 (4th Cir. Nov. 3, 1995) (unpublished). They are, however, available in suits against officers in their individual capacities. See Kentucky v. Graham, 473 U.S. 159, 167 n.13 (1985).

Defendants argue that Plaintiff's request for punitive damages must be dismissed altogether. Because punitive damages are not available against Boatright in his official capacity, the motion is **GRANTED** in part with respect to punitive damages. At this juncture, the Court finds that punitive damages may be available against Boatright in his individual capacity under § 1983 and may be available for Plaintiff's state law claim under the Governmental Tort Claims and Insurance Reform Act, so the motion is also **DENIED** in part with respect to punitive damages.

## V.   CONCLUSION

For the reasons discussed herein, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: May 31, 2022

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [ECF NO. 6]**

*Tom S Kleeh*
_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA

17